Good morning, Your Honor. I'm Steve Kaplan. I represent the appellants in this case, and may it please the Court, this is a tough appeal in one respect. The district judge did not render an articulated decision on the grounds for denying attorneys' fees, and that makes it particularly difficult for the Court of Appeal to address the question of whether there was an abuse of discretion because there are. Counsel, you're right about that, but let me get to the merits of the attorneys' fees issue as they impress me. It looks to me as though this is labor law preemption where the district judge erred, but the fact of the matter is he did. I can't say that he was unreasonable, and the questions of labor law preemption are frequently difficult. I wonder why he wasn't within his discretion or why, if we figure he didn't give reason, so we'll look at it fresh ourselves and see how we would exercise our discretion, why the obvious exercise of discretion wouldn't be to just leave things where they lay. Your Honor, I think that your question involves two different issues, and I want to sort of unpackage it if I may, and maybe it's because I'm not understanding properly, but labor law is often a difficult subject matter, especially Federal 301 preemption and the complete preemption doctrine. Preemption. The Federal labor law question is, what is the reason that the Federal labor law question is not in the underlying case? That was the issue in the underlying case. The issue in the current appeal is the Martin v. Franklin standard about whether or not the defendants in the first case had an objectively reasonable basis for doing the removal. So while they're intertwined, the Federal labor law question is, in a way, an indirect question. No, no. They're deeply intertwined because you can't apply that standard without looking at how hard the question is. So here's my response, if I understand your question, Your Honor. Number one, if we are saying that 301 complete preemption doctrine is often a difficult subject, then we would be in effect creating a rule of law that says that attorney's fees would never be appropriate if the removal was based on 301 Federal preemption and the complete preemption doctrine. I don't see that that follows. Is it that or is it that simply because of the fact that it's a difficult question, that's a factor that the district court has to consider in determining whether or not the defendant's position was substantially unreasonable? I think that is the question. Why isn't that a factor, counsel? By your own admission, this is a tough area of law. It was hard for the district court to figure out. It was hard for our panel to muster through. And now the question is was it an abuse of discretion to deny attorney's fees? And this is what I don't think the test is difficult area of law, but whether the law was well settled at the time of the removal. We're talking more specifically here. And it looks to me as though this might be a lockout governed by federal labor law or it might be a layoff governed by state law, and the collective bargaining agreement did not apply at the time, as I recall. It was expired. That's correct. But determining whether it's a lockout or a layoff, it's really critical, and it's kind of hard to say. And then hadn't there been a settlement agreement? Your Honor, depending on whether or not it is a lockout or a layoff was not at all the issue in the underlying case. The only issue was whether the removal was a reasonable thing to do or whether it was just abusive. No, no. Your Honor, with all due respect, the removal question in the underlying case was whether or not the assertion of the collective bargaining agreement was asserted in the complaint itself or whether it was asserted as a defense. If it's so open and shut that removal was all wet, there was no justification for the removal, so there should have been an attorney's fees award for the abuse of removal, then why did it take your side 588 attorney hours to do nothing but oppose removal? Well, the time spent is probative of a different issue and not the difficulty of the Caterpillar question, but the fact that the defendants raised a host of other questions, and we've outlined them in our brief. They raised merits issues both in the underlying district court level and at the court of appeal. They raised the machinist's preemption, which was not a question on appeal, but we had to brief it. They raised duty of fair representation issues, not issues on appeal, but we had to brief it because they were raised. And so there was a great amount of time spent. But all you litigated was removal. You never got to the merits. But in dealing with the issues that were raised by the defendants, you know, frankly, you do address the issues raised by your adversaries in litigation, and they raised a lot of issues that were not ñ that appropriately were not addressed by the court of appeal and the panel before you because they were not properly relevant to the removal question and to the Caterpillar question of whether or not the collective bargaining agreement was asserted as part of our complaint or as part of the defense. That was the only question because if the federal question is raised as a defense, that doesn't convey federal question jurisdiction for removal purposes. Mr. Kaplan, can you help me with the procedural posture? At the time that the removal was made, there had been a settlement agreement entered between the employers and the union. Is that correct? Yes, that's correct. And part of that settlement agreement, as I understand it, was a release of the very claims that you are asserting in your class action complaint. It was the union's release of a essentially identical claim that the union had brought in the federal ñ that the union had brought while the strike was going on. Right. In which the employer thought had been resolved in the settlement agreement. And as I understand the record, that's why they argued to our prior panel that it was embedded inherently in the merits of your complaint because of the fact that they thought it had been resolved. Well, they said it was embedded, but it was in fact raised as a defense. I understand that that's how our panel ultimately ruled, but I'm still trying to wrestle with whether or not it was objectively unreasonable for the employer to think, in light of the settlement agreement, that this whole matter had been resolved and therefore needed to be brought back before a federal court under 301 to put it to rest. It was not unreasonable for them to think that it was resolved by the settlement, and that will be an issue that will get raised again at the state court level where it would be properly raised. The question before the Ninth Circuit before was a much narrower question of did it convey or did it give federal question jurisdiction when it was raised as a defense. I understand that the defendants said it's intertwined. The Ninth Circuit rejected that. Even the defendants didn't quite give too much credence to their own argument, because even in their briefing in this case on page 9 of Ralph's brief, they say it's even if it were a defense, it should convert it to a federal question. That's not the law. It was not the law ever. We know that's not the law. And they're still saying it, I think, because that's really the only way it can reasonably be characterized. So your position is it's just straight English rule on removal, non-American rule? If they lose, there's attorney's fees? No. What I'm saying is if the law is settled at the time, then the record would support an award of attorney's fees under the standard established in Martin v. Franklin. The only reason you get where you are is because of the well-pleaded complaint rule. And clearly, if you ever got to the merits, the issues are related, the defense, right? I am assuming that the defendants will raise all those issues when we get to the merits. So you're right saying you're arguing on a very ‑‑ on a federal procedural rule to claim that, therefore, it was unreasonable. There are instances, not in this case because the Court has decided, where, in fact, the defense, especially in the patent area, where the defense, in fact, preempts because there's no possibility of a claim. You know what I mean? There are exceptions. Maybe this case would have been one of the exceptions. Well, there are many cases. In fact, the vast majority of cases where state law claims are brought, where state contract claims are brought, 301 Complete Preemption Doctrine is going to apply. The rule is generally reversed when it comes to state statutory claims. The vast majority of state statutory claims, which is what this is, are not held to be subject to the Complete Preemption Doctrine. Those are cases that were briefed at length in the underlying case. But it is not a rule of thumb anymore that preemption is the likely outcome when it comes to state statutory claims. In fact, I think today that most people would agree the doctrine is in the other direction. But it still comes back to, remember, there was no collective bargaining agreement in effect at the time that the wrongdoing was done. That's why, logically, raising a later-entered collective bargaining agreement, almost by its nature, has to be raised as a defense because there was no agreement at the time that the State Warrant Act was violated. The doctrine that you've determined whether the collective bargaining agreement has to be interpreted, would that also apply to the union's settlement agreement on behalf of its employees? Is that in the nature of a collective bargaining agreement? A settlement agreement between an employer and a union is in the nature of a collective bargaining agreement covered by Section 301. And like I say, we expect that these issues will be raised in the proper forum, which is the state court forum. That's what the Caterpillar Doctrine says. If you have a union contract that you raise as a defense, it doesn't convert the state law claim into a federal question, but presumably it can be raised as a defense later. Unless there's complete preemption. But preemption requires one of two things. It requires that the federal question be embedded in the complaint. The complaint, remember, alleges a state statutory violation that occurred when there was no collective bargaining agreement. By its very nature, it's an impossibility. Secondly, the second prong is does the resolution of the complaint, not of the defense, but the complaint, require interpretation of a collective bargaining agreement? The Ninth Circuit obviously held that it does not, or we would have lost before the prior panel. Thank you, counsel. I'm sorry. Did I interrupt you in mid-answer? Go ahead and finish. My train of thought has already, I think, been interrupted. But I just wanted to say that the complaint itself cannot, again, by its nature, require the interpretation of a collective bargaining agreement that did not exist at the time of the wrongdoing. Any later, and if I am repeating myself, I really will stop after this. If a later entered agreement is what is being used to try to bar the complaint, that by its very nature, and this is not complicated, is a defense. It's not embedded in the complaint, and that's why the complete preemption doctrine does not apply. Thank you, counsel. Good morning, Your Honors. Lawrence Gartner for Albertsons. We will be splitting our time with counsel for Ralph's five minutes each. Five each. Thanks. Thank you, Your Honors. In this case, facts speak louder than rhetoric. As the court has observed, the amount of time and money spent by the appellants in opposing the motion to remove, in opposing removal, is far greater than has been indicated in other cases. Well, you did raise a panoply of labor law issues to justify the removal, did you not? Yes, Your Honor, because this is a very unusual circumstance. Well, if that is the case, then why is Mr. Kaplan's argument wrong that the reason we had to spend 588 hours in litigating the removal was because of the host of issues that the employer raised when he removed? Well, if I understand Mr. Kaplan's response to the court this morning, he was indicating not the labor law issues. He seemed to be indicating, if I understood him correctly, that there was a portion of that, which is undefined, dealt with the underlying issue of the actual California Warrant Act claim. I would point out to the court, however, that in the appeal below, in the opening brief of the appellants, those issues were not discussed. And, in fact, in the reply brief, Albertson's is criticized for addressing those issues in its opposition because the appellants said, well, we didn't even bother arguing that. So why were they arguing it? So I think it's fair to say that the bulk, the large majority or bulk of the fees spent and the time spent were dealt with labor law issues. This was a very unique situation. Nobody, neither appellants nor appellees, have cited to the court any factual, any case where the factual circumstances were even close to what we had here. The Cal Warrant Act is a fairly new statute. It has not been interpreted much, if at all, by the California courts. And as the court has pointed out, the strike settlement agreement did, in fact, address the issue of Cal Warrant Act claims because those claims, almost an identical lawsuit, was brought by the union. And as part of the comprehensive settlement, the union decided that those claims would be waived on behalf of its members. I think it's also to be pointed out, Your Honors, that this is not just simply a claim where the two plaintiffs are filing claims on behalf of themselves. This is a representative action under the California Warrant Act. And, in fact, the plaintiffs are purporting to represent what essentially is the bargaining unit and, in fact, take over the role of the union, which, in fact, has waived these claims. I assume that you are going to be raising all these arguments to the Los Angeles County Superior Court on remand. We will, Your Honor. Okay. We will, Your Honor. And is that action stayed while we're arguing about attorneys? The action, I believe that the case has not actually been sent back to the state courts yet. Oh, we're still waiting for the district court mandate to issue a judgment. Yes, Your Honor. Yes, Your Honor. But, yes, the arguments that were raised in support of the defendant's 12B6 motion, which was granted by the district court below, will be very similar to the arguments raised in the state courts, Your Honor. Okay. If there are no further questions, I'll turn my time over to the counsel for us. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honor. Steven Katz on behalf of Appley Wealths Grocery Company. I don't want to belabor points that have already been discussed, but I would like to address two points briefly. First, regarding the issue of the panel plea of arguments, substantive arguments that were addressed in the briefs. This circuit in the Kramer case specifically warns removing parties that one simply cannot assert a hypothetical connection to a CBA. And, in fact, as language effectively says, simply because a court has to look at the CBA to determine that no provision of the CBA is in dispute does not create a basis for preemption. And so it necessarily requires a party asserting preemption to delve into the underlying substantive issues to show that there is a substantial, not a hypothetical, connection to a CBA, which is the reason largely why we get into those issues in the prior briefing. The second point I want to briefly address is the one argument in the briefs that hasn't been discussed so far. The appellant takes the position that special circumstances warrant an award of fees against Wealths Grocery because Wealths Grocery effectively pleaded guilty to criminal charges regarding conduct during the strike, namely hiring back certain lockout employees under false identities. And floats the suggestion in argument that somehow this conduct caused the procurement of the strike settlement agreement, which we all agree is a CBA, and therefore somehow constitutes improper conduct in this litigation justifying a departure from the Martin standard under special circumstances. First of all, that conduct is entirely outside of this litigation in time and in scope Two, there's absolutely no explanation as to how that conduct has somehow impaired the ability of the appellant to secure an order of remand. And three, the Martin standard is not a two-way ratchet, if you will, the way appellant asserts. The Supreme Court describes the special circumstances rule as being one where certain kinds of conduct by the non-removing party can effectively hop them out of the right to seek fees, even if there is a basis to award fees because the removal was objectively unreasonable. There's no indication in the case law, either in Martin or its progeny, that somehow the ratchet can turn the other way and that a party can somehow deprive itself of the benefit of the Martin standard because it's somehow engaged in improper conduct or special circumstances exists. Other than those two points, everything I would have to say has already been addressed, and I don't want to belabor the point unless there are any questions from the panel. Thank you, counsel. Dahl v. Albertsons is submitted. We'll hear Earnshaw v. Astry. Thank you. We're ready for you, counsel.
judges: Trager, Kleinfeld, Tallman